UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 07-cr-40018-JPG |
| KENDEL W. MCKINNEY, | |
| Defendant. | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendant Kendel W. McKinney's *pro se* motion for compassionate release pursuant to the First Step Act of 2018, Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239 (2018) (codified at 18 U.S.C. § 3582(c)(1)(A)) (Doc. 79). The Government has responded (Doc. 90), and McKinney has replied to that response (Doc. 94).

**I.    Compassionate Release**

The First Step Act expanded the existing compassionate release provisions of federal law by opening the door for a defendant to move for compassionate release rather than only allowing the Director of the Bureau of Prisons ("BOP") to so move. First Step Act, § 603(b)(1) (codified at 18 U.S.C. § 3582(c)(1)(A)); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The relevant portion of the law provides:

> **(c) Modification of an imposed term of imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after

> considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> > (i) extraordinary and compelling reasons warrant such a reduction. . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. . . .

18 U.S.C. § 3582(c)(1)(A).

In exhausting administrative remedies, the defendant must have asserted the same or similar issues as grounds for relief in his request to the warden as he does in his motion for compassionate release. *United States v. Williams*, 987 F.3d 700, 703 (7th Cir. 2021). Otherwise the warden is not equipped to properly consider the defendant's request.

As for the final clause of § 3582(c)(1)(A), there is no applicable Sentencing Commission policy statement regarding motions for compassionate release filed by defendants. *Gunn*, 980 F.3d at 1180. The existing compassionate release policy statement, United States Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13, applies only to motions filed by the BOP, not defendants themselves, "[a]nd because the Guidelines Manual lacks an applicable policy statement, the trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion." *Id.* Nevertheless, the substantive aspects of U.S.S.G. § 1B1.13 provide a "working definition" of "extraordinary and compelling reasons" that should guide the Court's discretion without strictly confining it. *Id.* A court that "strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.* Additionally, the Court should give substantial weight to the BOP's analysis regarding "extraordinary and compelling reasons" in any particular case. *Id.*

So the Court looks to U.S.S.G. § 1B1.13 for guidance. That policy statement adds the provision that the defendant must not be a danger to the safety of any other person or to the

community. U.S.S.G. § 1B1.13(2).[1]  The application notes further define "extraordinary and compelling reasons" to include, as relevant for this case:

> **(A)** **Medical Condition of the Defendant.—**
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is—
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process,
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> * * *
>
> **(D)** **Other Reasons.—**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13 cmt. n. 1.

Thus, for a defendant to be eligible for compassionate release he must have exhausted his administrative remedies,[2] and the Court must find that (1) extraordinary and compelling reasons for release exist, and (2) considering the applicable factors in 18 U.S.C. § 3553(a), the extraordinary and compelling reasons warrant release.  18 U.S.C. § 3582(c)(1)(A).  The movant bears the burden of making such a showing, and the Court has discretion to determine whether the defendant satisfied that burden.  *United States v. Newton*, 996 F.3d 485, 488 (7th Cir. 2021);

---

[1] This provision is similar, but not identical, to 18 U.S.C. § 3553(a)(2)(C), which requires the Court to consider the need for the sentence "to protect the public from further crimes of the defendant."

[2] The exhaustion requirement is not jurisdictional and may be waived by the Government.  *Gunn*, 980 F.3d at 1179.

*Gunn*, 980 F.3d at 1180. The Court uses U.S.S.G. § 1B1.13 cmt. n. 1 to guide its discretion in this regard and should give great weight to the BOP's analysis regarding "extraordinary and compelling reasons," if it has given any such analysis. *Gunn*, 980 F.3d at 1180. The Court now turns to the specifics of the defendant's case.

**II.     Analysis**

In April 2007, McKinney pled guilty to two counts of distribution of less than 5 grams of crack cocaine. At the defendant's sentencing in August 2007, the Court found that McKinney was a career offender based on three prior drug felony convictions (delivery of a controlled substance) and one prior violent felony conviction (aggravated robbery), all before he reached age 24. *See* U.S.S.G. § 4B1.1.[3] His career offender base offense level was 34 because of the statutory maximum sentence of 30 years under 21 U.S.C. §§ 841(b)(1)(C) and 851, reduced by 3 points for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a) & (b), to 31. His criminal history was, of course, VI because of his career offender status, making his sentencing range 188 to 235 months. At the time of sentencing, he also had nine pending state charges and twenty-one traffic violations. The Court imposed an above-guideline sentence of 293 months in prison on each count, to run concurrently. The Court of Appeals affirmed McKinney's sentence. *United States v. McKinney*, 543 F.3d 911 (7th Cir. 2008). McKinney did not seek a writ of *certiorari* from the Supreme Court.

Now, McKinney asks the Court to direct the BOP to release him to home confinement because of his diabetes, hypertension, and hyperlipidemia and the special danger posed to him from COVID-19 by those risk factors. He also requests the Court grant him immediate compassionate release. McKinney argues that it is too dangerous to require him to exhaust

---

[3] Unless otherwise noted, all references to the U.S.S.G. are to the 2006 version.

administrative remedies before coming to the Court because it will delay needed relief. He further expresses skepticism about whether COVID-19 vaccines will be available to all BOP inmates and whether inmates will be able to take the precautions recommended by the CDC. Finally, McKinney says he has taken numerous steps toward improving himself and has a plan to live with his mother once he is released.

In response, the Government urges the Court to deny McKinney relief because he admits he did not exhaust administrative remedies before filing his motion, he declined the BOP's offer to vaccinate him against COVID-19 in March 2021, and he has not shown that his health conditions, even in combination with the COVID-19 pandemic, amount to an extraordinary and compelling reason for release. The Government notes that McKinney was diagnosed with COVID-19 in November 2020, he was asymptomatic, and he recovered ten days later. It also notes there is no indication McKinney is one of the few who cannot receive or benefit from the COVID-19 vaccine. Finally, the Government argues that McKinney has not shown he poses no danger to the safety of the community or that the other § 3553(a) factors weigh in favor of his release. It points to his lengthy criminal history, the criminal charges that were pending at the time of his sentencing, and his dangerous flight from law enforcement in this case, all of which contributed to the Court's original decision to impose an above-guideline sentence.

In reply, McKinney contends that he has, in fact, exhausted his administrative remedies by asking the warden on April 16, 2021, to move for compassionate release and not receiving a response within thirty days. He asserts that his criminal history is non-violent and "stale" and that he has exhibited exemplary conduct since he has been in prison, including taking classes and avoiding disciplinary tickets.

### A.     Exhaustion of Remedies

The Government invokes exhaustion of remedies as a defense, and it is clear that McKinney had not exhausted his administrative remedies when he filed his motion.

The exhaustion of remedies portion of § 3582(c)(1)(A) provides that the defendant may file a motion for compassionate release after the earlier of two events: (1) "fully exhaust[ing] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." As a practical matter, (2) will almost always provide the relevant exhaustion mark because it is virtually impossible to exhaust the BOP's comprehensive administrative remedy process within 30 days. Thus, the Court asks whether the defendant waited 30 days after the warden received his request before filing this motion. The 30-day period is a mandatory claim-processing rule that must be enforced by the Court if the Government raises it. *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021) (noting that "may not modify a term of imprisonment" is language of a mandatory claim-processing rule that must be enforced). Thus, where an inmate has not satisfied either option for exhausting his administrative remedies for compassionate release *before* filing his motion, and where the Government has properly invoked the exhaustion defense, the Court must deny the defendant's motion without prejudice to another motion filed *after* exhaustion. *Id.*

McKinney states that on April 16, 2021, he submitted a request to the warden to move for his compassionate release. However, McKinney mailed his motion for compassionate release before May 4, 2021 (his cover letter is dated April 25, 2021), well before 30 days had passed from his request to the warden. It is clear that McKinney filed his motion for compassionate release before completing either of the methods for exhaustion listed in the First Step Act, so his

motion is premature.  The Court is sympathetic to McKinney's position that the 30 days have now passed, but Congress has not authorized the Court to do this where the Government invokes the exhaustion defense, opting instead to give the BOP 30 days exclusively to consider an inmate's request *before* the inmate can file his own motion.  *Id.*

Accordingly, the Court will deny McKinney's motion (Doc. 79) without prejudice to another motion filed *after* fully exhausting all administrative rights to appeal a failure of the BOP to bring a motion *or* the lapse of 30 days from the date the warden received his request, whichever is earlier.  Because 30 days have passed since the defendant's request to the warden, he is free to file another motion now, although for the reasons discussed below, such a motion is not likely to be successful.

B.     Extraordinary and Compelling Reasons

Although it is not required to in light of McKinney's premature motion, the Court turns to the merits of the motion.  As for the defendant's physical condition, the Court does not dispute that he suffers from serious health conditions that make him especially susceptible to the dangers of COVID-19.  However, the defendant has not shown that he faces extraordinary and compelling circumstances based on COVID-19 where he has refused to be vaccinated against the disease.

"A prisoner who can show that he is unable to receive or benefit from a vaccine still may turn to [the compassionate release] statute, but, for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); *accord United States v. Kurzynowski*, 17 F.4th 756, 760-61 (7th Cir. 2021); *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021) (recognizing "prisoners who have access to a

7

vaccine cannot use the risk of COVID-19 to obtain compassionate release"). As the *Broadfield* court recognized, "a prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred." *Broadfield*, 5 F.4th at 803.

The defendant has not shown he is unable to receive or benefit from the vaccine. In such circumstances, the Court will not allow the defendant's claim for release to be bolstered by his own failure to take the simplest, cheapest, most effective precaution against the danger he fears. There are simply no extraordinary and compelling reasons to release the defendant.

    C.    § 3553(a) Factors

Even if there were extraordinary and compelling reasons for compassionate release, McKinney is still a danger to the safety of others in the community. The Court's analysis of the § 3553(a) factors at the sentencing hearing continue to apply now. McKinney has a long criminal history, most of which is "stale" likely because he has been incarcerated for almost the past fifteen years. Additionally, he had many pending criminal charges at the time he was sentenced, and had led dangerous flights from law enforcement. All of this led the Court to impose an above-guideline sentence. Although it appears he has tried to improve himself in prison and to avoid disciplinary sanctions, his full sentence (reduced by any credits to which he is entitled) is still necessary to protect the public from his further crimes. Anything less would undermine the gravity of his offense and would not promote respect for the law. In essence, nothing has materially changed since McKinney's sentencing with respect to the § 3553(a) factors.

    D.    Home Confinement

The defendant also asks the Court, as an alternative, to order him placed on home

confinement. The Court does not have jurisdiction to entertain such a request. "After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence." *United States v. Wilson*, 503 U.S. 329, 335 (1992). The BOP then has "plenary control" placement of the inmate, subject only to statutory limits. *Tapia v. United States*, 564 U.S. 319, 331 (2011); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021). This includes the decision whether to house an inmate in a prison or in home confinement, 18 U.S.C. § 3624(c)(2), and the Court has no jurisdiction to review that decision, 18 U.S.C. § 3621(b) ("Notwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court."). *Saunders*, 986 F.3d at 1078 (noting that a court lacks authority to change an inmate's place of imprisonment, although it may recommend a different placement). The defendant may seek relief from the BOP by filing an administrative remedy, but the Court cannot help him in the pending matter.

### III.    Conclusion

For all of these reasons, the Court **DENIES** the defendant's motion for compassionate release (Doc. 79) **without prejudice** to another motion after exhaustion of remedies as provided in § 3582(c)(1)(A).

**IT IS SO ORDERED.**
**DATED:  February 16, 2022**

                                        s/ J. Phil Gilbert
                                        **J. PHIL GILBERT**
                                        **DISTRICT JUDGE**